FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOY MELINDA ALLREAD, | No. 2:15-cv-00261-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| NANCY A. BERRYHILL,[1] | |
| Acting Commissioner of Social Security, | ECF Nos. 15, 16 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment.  ECF Nos. 15, 16.  The parties consented to proceed before a magistrate

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is

1  susceptible to more than one rational interpretation, [the court] must uphold the

2  ALJ's findings if they are supported by inferences reasonably drawn from the

3  record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

4  court "may not reverse an ALJ's decision on account of an error that is harmless."

5  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

6  nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

7  party appealing the ALJ's decision generally bears the burden of establishing that

8  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

9  ## FIVE-STEP EVALUATION PROCESS

10      A claimant must satisfy two conditions to be considered "disabled" within

11  the meaning of the Social Security Act.  First, the claimant must be "unable to

12  engage in any substantial gainful activity by reason of any medically determinable

13  physical or mental impairment which can be expected to result in death or which

14  has lasted or can be expected to last for a continuous period of not less than twelve

15  months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

16  impairment must be "of such severity that he is not only unable to do his previous

17  work[,] but cannot, considering his age, education, and work experience, engage in

18  any other kind of substantial gainful work which exists in the national economy."

19  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

20

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

*Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI

supplemental security income benefits on December 9, 2011, alleging a disability

onset date of August 1, 2009.  Tr. 211-27.  The applications were denied initially,

Tr. 163-66, and on reconsideration, Tr. 168-72.  Plaintiff appeared at a hearing

before an Administrative Law Judge (ALJ) on May 7, 2014.  Tr. 40-76.  On June

26, 2014, the ALJ denied Plaintiff's claim.  Tr. 15-39.

1    At step one, the ALJ found that Plaintiff has not engaged in substantial

2 gainful activity since August 1, 2009.  Tr. 20.  At step two, the ALJ found Plaintiff

3 has the following severe impairments: obesity, asthma, cannabis abuse, post-

4 traumatic stress disorder (PTSD); borderline personality disorder; and major

5 depressive disorder versus bipolar disorder versus mood disorder, not otherwise

6 specified.  Tr. 21.  At step three, the ALJ found that Plaintiff does not have an

7 impairment or combination of impairments that meets or medically equals a listed

8 impairment.  Tr. 21.  The ALJ then concluded that Plaintiff has the RFC to perform

9 medium work, with the following non-exertional limitations:

> Claimant is not able to climb ladders, ropes, or scaffolds. She can have no
> exposure to unprotected heights or dangerous machinery. She can have no
> more than frequent left upper extremity overhead reaching. She should avoid
> concentrated exposure to extreme cold, wetness, noise, and pulmonary
> irritants. The claimant is able to perform SVP 3 level tasks. She can have
> brief, superficial contact with the general public and no corroborative
> teamwork endeavors with co-workers.

Tr. 23.  At step four, the ALJ found that Plaintiff is able to perform relevant past

work as a hand packager and laundry folder.  Tr. 31.  In the alternative, the ALJ

found at step five that there are other jobs that exists in significant numbers in the

national economy that Plaintiff could perform within her assessed RFC, such as

industrial cleaner, laundry worker, laundry folder, and hand packager.  Tr. 31-32.

On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the

Social Security Act during the adjudicative period.  Tr. 32-33.

On August 17, 2015, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly discredited Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence. ECF No. 15 at 13.

## DISCUSSION

### A.  Adverse Credibility Finding

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 15 at 13-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely credible." Tr. 24.

### 1. Underreported Marijuana Use

The ALJ found that the Plaintiff "has often underreported and minimized her marijuana abuse to medical providers and in testimony at the hearing." Tr. 24.

Conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding. *Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). Moreover, an ALJ may also consider a Plaintiff's reputation for truthfulness in evaluating their credibility. *Thomas,* 278 F.3d at 959.

The ALJ noted that in May 2012, Plaintiff admitted that she had been smoking marijuana "all day, every day" but that she had slowed down her marijuana consumption about a month earlier, so she was no longer smoking every day. Tr. 24 (citing Tr. 877). However, at that time, Plaintiff was "not willing to discontinue THC use." Tr. 877. In March, 2013, Plaintiff was diagnosed with

cannabis dependence in early partial remission.  Tr. 24 (citing Tr. 1035).  A

dependence is considered in early partial remission if "for at least 1 month, but less

than 12 months, one or more criteria for Dependence or Abuse have been met (but

the full criteria for Dependence have not been met)." American Psychiatric

Association, Diagnostic and Statistical Manual of Mental Disorders, Appendix C

(rev. 4th ed. 2000), *available at* https://www.ncbi.nlm.nih.gov/books/NBK64247/.

The ALJ found that a diagnosis of early partial remission in March 2013 was

incompatible with Plaintiff's testimony before the ALJ in May 2014 that she had

not smoked marijuana for two years.  Tr. 24 (citing Tr. 56).  While it is possible to

be in early partial remission and not consuming cannabis, it is also possible to

consume cannabis during early partial remission.  *See* DSM-IV-TR, Appendix C.

The diagnosing nurse did not indicate in her report which criteria for dependence

or abuse the Plaintiff met in March 2013.  *See* Tr. 1035-38.  The Court must

uphold the ALJ's decision where the evidence is susceptible to more than one

rational interpretation.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

   *2.  Secondary Gain*

   The ALJ discounted Plaintiff's symptom claims because her symptom

testimony throughout the record appears to be influenced by a desire to establish

and maintain Department of Social and Health Services disability benefits and

Social Security disability benefits.  Tr. 25.

Evidence of motivation to obtain social security benefits may be considered in making a credibility determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). In this case, the ALJ cited two specific examples in which Plaintiff demonstrated concern about obtaining access to benefits during the course of treatment. On February 13, 2013, Plaintiff's mental health provider noted that Plaintiff declined outpatient drug treatment services (ICOS), because she was afraid "how that will affect her chances at SSI if they thought she was an addict." Tr. 25 (citing Tr. 970). On February 6, 2013, she also declined drug treatment for adults with co-occurring mental illness and substance abuse disorders because she feared it would "hinder her ability to get SSI." Tr. 25 (citing Tr. 970).

Plaintiff contends that all claimants applying for social security know that it will result in pecuniary gain if successful. ECF No. 15 at 15. While it is true that every applicant knows of the possibility for pecuniary gain, the ALJ pointed to specific evidence in the record where Plaintiff took deliberate action to attempt to improve her ability to qualify for SSI benefits at the expense of recommended treatment. The ALJ's finding that Plaintiff was motivated to get benefits for pecuniary gain is a specific, clear, and convincing reason to discount her testimony.

### 3. Lack of Objective Medical Evidence

The ALJ gave less weight to Plaintiff's statements because the objective medical evidence does not substantiate Plaintiff's allegations of disabling limitations.  Tr. 25.

An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[2]  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

---

[2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms.  S.S.R. 16-3p at *6.  Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

The ALJ cited detailed evidence supporting the conclusion that the medical record does not document the degree of limitation alleged.  Tr. 25-26.  Specifically, the ALJ noted that "[t]he record consistently shows normal mental status examinations[.]"  Tr. 25 (citing Tr. 695-773, Tr. 906-87, Tr. 1081-1245); *see, e.g.*, Tr. 712 ("Affect is normal in range."); Tr. 922 ("The client came in stating she was doing well[.]").  Three of Plaintiff's six severe impairments are related to Plaintiff's mental status.  Tr. 21.

Next, the ALJ found that the medical evidence did not support the claim that Plaintiff cannot carry out simple work functions.  Tr. 26.  Despite finding that Plaintiff's medical record supported that she had some mental health limitations, the ALJ found that Plaintiff's medical record also supported that Plaintiff retained the mental capacity to carry out basic mental work activities.  Tr. 26.  Citing Social Security regulations, the ALJ made a finding that basic work activities are "1) understanding, remembering, and carrying out simple instructions; 2) making simple, work-related decisions; 3) responding appropriately to supervisors, co-workers, and usual work situations; and 4) dealing with changes in a routine work setting."  Tr. 26 (citing SSR 85-28).  The ALJ determined that the Plaintiff met these requirements because her medical record supported that she was "able to perform SVP 3 level tasks and have brief, superficial contact with the general public and no corroborative teamwork endeavors with co-workers."  Tr. 26.

1    The ALJ considered Plaintiff's claim that she was suffering "pain in multiple

2 areas, including her back and shoulders."  Tr. 26.  Ultimately, the ALJ found that

3 "these pain complaints are non-severe as they have not caused more than minimal

4 limitation to the [Plaintiff's] ability to perform work activity."  Tr. 26.  Despite this

5 finding, the ALJ credited the Plaintiff's claims finding that her "pain complaints

6 and their concomitant impact on her overall level of function and [gave] her the

7 benefit of the doubt in limiting her to medium exertion work with the postural,

8 reaching, and environmental limitations given in the residual functional capacity."

9 Tr. 26.  The ALJ found that Plaintiff's symptom testimony was non-severe because

10 she rarely sought treatment for pain, and when she did, the medical findings were

11 unexceptional.  For instance, on October 21, 2010, Nurse Abney opined that

12 Plaintiff's neck pain was due to stress.  Tr. 656.  In April 2012, Plaintiff suggested

13 to Dr. Coleman that she was suffering from jaw pain and neck pain which she

14 attributed to Sjogren's syndrome; Dr. Coleman found Plaintiff's suggestion

15 implausible.  Tr. 867.  Plaintiff's examination with Dr. Coleman was negative,

16 expect for tenderness to palpitation over the temporomandibular joints.  Tr. 865.

17 On another occasion, Plaintiff underwent x-rays of her right shoulder and left knee

18 in connection with reported pain; the x-rays were negative.  Tr. 889-90.

19    Plaintiff alleged that she had a hard time leaving her house to attend mental

20 health treatment appointments.  Tr. 55.  However, Plaintiff's medical record

indicates that she disengaged from her mental health treatment in May 2011 and

chose not to attend treatment because she did not want to stop smoking marijuana.

Tr. 25 (citing Tr. 722).  Between June 2012 and April 2014, Plaintiff's mental

health provider noted Plaintiff's absence from mental health treatment for a

number of non-mental health reasons such as surgery, physical illness,

transportation issues, broken furnace, scheduling conflict, sprained ankle, and

family issues.  Tr. 25 (citing *e.g.* Tr. 921, 937, 938, 967, 973, 1095, 1101, 1111,

1157).  However, there is no evidence to suggest that Plaintiff failed to attend

counseling due to mental health-related reasons.  *See* Tr. 25 (citing Tr. 906-87;

1081-1245).  Furthermore, in 2013, Plaintiff was attending treatment three days per

week, because she wanted to fill up her schedule and get out of her house.  Tr. 25

(citing Tr. 970).  The ALJ found that this cast doubt on Plaintiff's claim that she

did not like to leave her house because of anxiety.  Tr. 25 (citing Tr. 55).

The ALJ reasonably relied on a lack of objective medical evidence in

finding Plaintiff's symptom claims not credible.

### 4.  Failure to Follow Recommended Treatment

The ALJ rejected Plaintiff's symptom claims because Plaintiff did not seek

treatment as recommended.  Tr. 25.  It is well-established that unexplained non-

compliance with treatment reflects on a claimant's credibility.  *See Molina*, 674

F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

1    The ALJ noted that Plaintiff failed to follow recommended mental health

2    treatment.  Tr. 25.  For example, in May 2011, Plaintiff was discharged from

3    Spokane Mental Health because she "does not appear amenable to therapy at this

4    time."  Tr. 25 (citing Tr. 722).  The treatment provider noted that Plaintiff's

5    "resistance to treatment services appear to have negatively impacted her ability to

6    function and achieve goals that she had set."  Tr. 722.  In April 2011, Plaintiff

7    indicated to her mental health treatment provider that she was not interested in

8    treatment because she did not want to stop smoking marijuana.  Tr. 25 (citing Tr.

9    725).  In July 2011 and November 2011, Plaintiff presented for an intake

10   assessment at Lutheran Community Services.  Tr. 25 (citing Tr. 819).  However,

11   she did not return for treatment.  *Id.*

12   Next, the ALJ noted that Plaintiff "has mild gastritis and other

13   gastrointestinal issues, exacerbated by smoking and non-compliance with

14   recommended treatment."  Tr. 27 (citing Tr. 988-91, 1005).  Plaintiff was informed

15   of gastritis irritants, including smoking and directed by her doctor to avoid

16   irritants.  Tr. 988-91.  Plaintiff admitted that she continued to smoke, and ingest

17   other irritants.  Tr. 60.  Plaintiff's unexplained failure to follow treatment is a clear

18   and convincing reason to discredit her symptom testimony.

19

20

*5. Impairments Controlled with Treatment*

The ALJ concluded that several of Plaintiff's alleged limitations were effectively controlled with treatment. Tr. 25-26. An impairment that can be effectively controlled with treatment is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The evidence in this case supports the ALJ's determination that many of Plaintiff's symptoms are well-controlled with medication. Tr. 25. First, Plaintiff claims that she is affected by bipolar disorder. Tr. 57. There is medical evidence that Plaintiff has bipolar disorder, however, the record indicates that it is well-controlled with medication. Tr. 676. The ALJ noted that when Plaintiff was admitted to the emergency room on November 21, 2011, she noted that she had bipolar disorder, but that it was "fairly well controlled on her current medication regimen." Tr. 25 (citing Tr. 676). On August 28, 2011, Plaintiff was admitted to the emergency room due to an exacerbation of bipolar symptoms. Tr. 25 (citing Tr. 679). However, Plaintiff had been off her bipolar medication for approximately two weeks at that time. Tr. 25 (citing Tr. 679).

Regarding Plaintiff's asthma, the ALJ found that it was well-controlled with medication. Tr. 26 (citing Tr. 647). Her medical record demonstrates that these treatments are effective because she has not been hospitalized for treatment. Tr. 26. She was treated for pneumonia, bronchitis, and other respiratory infections,

but such occurrences were rare, which generally suggests that Plaintiff's medication regime is an effective treatment for her asthma. Tr. 26 (citing Tr. 677). Despite this finding, the ALJ restricted Plaintiff to work that avoided concentrated exposure to extreme cold, wetness, and pulmonary irritants. Tr. 26.

This was a specific, clear and convincing reason to reject a Plaintiff's symptom testimony.

### 6. Daily Activities

Finally, the ALJ found that Plaintiff's daily activities were inconsistent with the severe limitations Plaintiff alleged. Tr. 27. A claimant's reported daily activities can form the basis of an adverse credibility determination if the activities contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict

1    claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal

2    quotation marks and citations omitted).

3         Here, the ALJ's found that the Plaintiff's daily activities were minimally

4    impacted.  Plaintiff reported being able to care for herself and her children

5    independently.  Tr. 27 (citing Tr. 884).  She does housework (vacuuming, dishes,

6    cleaning the bathroom, laundry, sweeping, making her bed), and reported

7    preparing dinner and other meals.  Tr. 27 (citing Tr. 858, 641).  She also

8    sometimes does yardwork.  Tr. 27 (citing Tr. 784).  Furthermore, Plaintiff is able to

9    shop for groceries independently, and she arranged to get a ride a couple times a

10   month to go to the grocery store.  Tr. 27 (citing Tr. 641).  She is able to ride the

11   bus to get to the grocery store at other times during the month.  Tr. 27 (citing Tr.

12   641).  Plaintiff reported being able to care for her children, including cooking for

13   her children, getting them ready for school, taking them to the park, and playing

14   with them.  Tr. 27 (citing Tr. 784, 858, 931).  Furthermore, Plaintiff leaves the

15   house regularly.  She reported that sometimes she spends the morning at her

16   neighbor's house.  Tr. 27 (citing Tr. 858).  She takes classes through Spokane

17   Mental Health, and worked when it was required to receive TANF benefits.  Tr.

18   55, Tr. 27.  When asked what daily activities changed as a result of her disability,

19   she replied "being able to work[,]" but did not indicate any other changes.  Tr. 641.

20

1    The ALJ also found that some of Plaintiff's reported daily activity

2   limitations were situational.  Tr. 27.  For example, Plaintiff reported that she could

3   not do laundry, however, this was only because she did not have a washer and

4   dryer, not because she was physically unable to do so.  Tr. 27 (citing Tr. 64-65).

5   Plaintiff also reported that she no longer rode her bike because her daughter moved

6   away, not because she was unable to do so.  Tr. 61.  She is able to drive, but does

7   not do so because she does not currently have a valid license.  Tr. 641. Ultimately,

8   the record supports that Plaintiff's daily activities "contradict claims of a totally

9   debilitating impairment."  *Molina*, 674 F.3d at 1112-13 (internal quotation marks

10  and citations omitted).  The ALJ reasonably determined that Plaintiff's daily

11  activities were inconsistent with her allegations of disabling symptoms.

12  **B.  Medical Opinion Evidence**

13       Plaintiff faults the ALJ for discounting the medical opinions of Tushar

14  Kumar, M.D., and Samantha Chandler, Psy.D.  ECF No. 15 at 18-20.

15       There are three types of physicians: "(1) those who treat the claimant

16  (treating physicians); (2) those who examine but do not treat the claimant

17  (examining physicians); and (3) those who neither examine nor treat the claimant

18  but who review the claimant's file (nonexamining or reviewing physicians)."

19  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

20  "Generally, a treating physician's opinion carries more weight than an examining

1  physician's, and an examining physician's opinion carries more weight than a

2  reviewing physician's." *Id.* "In addition, the regulations give more weight to

3  opinions that are explained than to those that are not, and to the opinions of

4  specialists concerning matters relating to their specialty over that of

5  nonspecialists." *Id*. (citations omitted).

6      If a treating or examining physician's opinion is uncontradicted, an ALJ may

7  reject it only by offering "clear and convincing reasons that are supported by

8  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

9  "However, the ALJ need not accept the opinion of any physician, including a

10  treating physician, if that opinion is brief, conclusory and inadequately supported

11  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228

12  (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or

13  examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

14  may only reject it by providing specific and legitimate reasons that are supported

15  by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester* 81 F.3d at 830-

16  31).

17      *1.  Dr. Kumar*

18      Dr. Kumar examined Plaintiff on April 12, 2012, Tr. 855-60, and diagnosed

19  Plaintiff with depressive disorder and anxiety likely resulting from PTSD.  Tr. 859.

20  He opined that Plaintiff had no impairment in performing simple and repetitive

1    tasks; in accepting instructions from a superior; and in her ability to perform work

2    activities on a consistent basis without special or additional instructions.  Tr. 860.

3    Dr. Kumar opined that Plaintiff's "ability to interact with coworkers and the public

4    may be moderately impaired;" and that Plaintiff's "ability to maintain regular

5    attendance in the workplace may be moderately to severely impaired, as it appears

6    as thought [sic] she has significant depressive symptoms including problems with

7    low motivation and poor energy, which can make regular attendance problematic.

8    Her ability to complete a normal workday or workweek without interruptions from

9    a psychiatric condition is also similarly moderately impaired."  Tr. 860.  The ALJ

10   assigned "substantial weight" to Dr. Kumar's opinion, "with the exception of his

11   comment that the claimant's ability to maintain regular attendance in a workplace

12   and complete a normal workday or work week without interruptions may be

13   moderately to severely impaired."  Tr. 28 (citing Tr. 860).

14       Because Dr. Kumar's opinion that Plaintiff would suffer limitations in her

15   ability to attend work is controverted by Dr. Chandler's opinion, Tr. 642, the ALJ

16   must provide specific and legitimate reasons that are supported by substantial

17   evidence to reject it.  *Bayliss*, 427 F.3d at 1216.

18       First, the ALJ discounted Dr. Kumar's opinion because Dr. Kumar did not

19   indicate in his evaluation the extent to which Plaintiff's admitted drug use

20   impacted his opined limitations.  Tr. 28.  Opinion evidence may be discounted

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 23

based on drug or alcohol use affecting the opinion.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *Andrew v Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995).  Plaintiff admitted to Dr. Kumar that she smoked marijuana daily.  Tr. 857.  However, Dr. Kumar did not indicate the extent to which Plaintiff's admission impacted his conclusion that Plaintiff would have difficulty regularly attending work.  *See* Tr. 855-860.  The ALJ determined that it is reasonable to conclude that Plaintiff's marijuana abuse "would constitute the primary basis for any speculative difficulties she might experience maintaining attendance in an employment setting and completing a normal work day or work week."  Tr. 28.

Dr. Kumar indicated in his evaluation that Plaintiff would be unable to attend work regularly was because "it appears as thought (sic) she had significant depressive symptoms including problems with motivation and poor energy, which can make regular attendance problematic."  Tr. 860.  However, earlier in Dr. Kumar's report, he discounts Plaintiff's depression complaints.  Tr. 855.  Dr. Kumar noted that Plaintiff's "primary reason for applying for disability is secondary to her depression."  *Id.*  He goes on to indicate that "she has been on antidepressants for the past 14-15 years."  *Id.*  Dr. Kumar opined that Plaintiff responded fairly well to the antidepressants, and reported that Plaintiff said they "made things manageable."  Tr. 856.  Together, these observations would tend to

1  indicate that Plaintiff relatively had control of her depression, by Dr. Kumar's

2  estimation.  He did not evaluate if the noted symptoms—poor motivation and low

3  energy—could be attributed to Plaintiff's reported marijuana abuse.  *See* Tr. 855-

4  860.  The ALJ's rejection of Dr. Kumar's opinion for not addressing the impact of

5  marijuana use is reasonable, particularly in light of Dr. Chandler's opinion that

6  Plaintiff's marijuana use aggravates her psychological symptoms.  Tr. 642.

7       Second, the ALJ discounted Dr. Kumar's opinion, finding it inconsistent

8  with longitudinal findings in the record.  Tr. 28.  Relevant factors to evaluating any

9  medical opinion include the amount of relevant evidence that supports the opinion,

10  the quality of the explanation provided in the opinion, and the consistency of the

11  medical opinion with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028,

12  1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  Overall, the ALJ found that Dr.

13  Kumar's opinion "does not establish any significant degree of limitation of the

14  [Plaintiff's] ability to maintain attendance in an employment setting and complete

15  a normal workday or work week if she were sufficiently motivated to do so."

16  Tr. 28 (citing Tr. 855-60).

17       Dr. Kumar's opinion that Plaintiff was limited in her ability to attend work is

18  inconsistent with the record as a whole as nothing in the record tends to indicate

19  that she could not work if she was motivated to do so.  For example, Plaintiff was

20  able to regularly attend mental health treatment, with absences attributed to non-

mental health reasons.  Tr. 921, 937, 938, 967, 973, 1095, 1101, 1111, 1157.  This

suggests that Plaintiff's attendance issues are unrelated to her mental health status

and further suggests that she could regularly attend work if so motivated.  These

reasons to discount Dr. Kumar's opinion are clear and convincing and supported

by substantial evidence.

### 2.  Dr. Chandler

Dr. Chandler examined Plaintiff on November 3, 2010, Tr. 637-42, and

opined that Plaintiff's "use of alcohol and marijuana likely exacerbates her

psychological symptoms."  Tr. 28 (citing Tr. 642).  She further indicated that

Plaintiff's daily living activities tended to indicate that she was mostly

independent.  Tr. 642.  She evaluated Plaintiff as likely having difficulty with

interpersonal interactions with supervisors and co-workers, but capable of

interacting with the public without restriction.  *Id.*  Dr. Chandler's mental status

examination indicated Plaintiff's "memory; concentration; ability to follow short,

simple, instructions; abstract reasoning and executive functioning were within

normal limits."  Tr. 29 (citing Tr. 642).  The ALJ assigned Dr. Chandler's opinion

"some weight."  Tr. 28.

Because Dr. Chandler's opinion is controverted by the state agency

psychological consultants, Tr. 105-26, Tr. 129-58, the ALJ must provide specific

1    and legitimate reasons that are supported by substantial evidence to reject it.

2    *Bayliss*, 427 F.3d at 1216.

3          Plaintiff objected that the ALJ "gave only some weight to Dr. Chandler's

4    opinion that [Plaintiff] could not interact appropriately with the public, reasoning

5    there was no evidence to support the opinion." ECF No. 15 at 19 (citing Tr. 28)

6    (internal quotation marks omitted). However, Plaintiff misreads the ALJ's opinion

7    and Dr. Chandler's opinion. Dr. Chandler opined that "[t]here is no evidence to

8    suggest [Plaintiff] could not interact appropriately with the public." Tr. 642.

9    Contrary to Plaintiff's claims, the ALJ did not discount the opinion because there

10    was no evidence to support it. *See* Tr. 29.

11          Plaintiff did not identify any other limitations opined by Dr. Chandler that

12    the ALJ failed to incorporate into the RFC. *See* ECF No. 15 at 19-20. Arguments

13    not coherently developed in briefs on appeal are deemed abandoned. *See United*

14    *States v. Kimble,* 107 F.3d 712, 715 n. 2 (9th Cir. 1997).

15          The ALJ did not err in assessing Dr. Chandler's opinion because the ALJ

16    found that Plaintiff was more limited than Dr. Chandler opined. The ALJ first

17    noted that Dr. Chandler's "opinion supports finding the claimant is not disabled."

18    Tr. 29. Despite this, the ALJ found that "the evidence as a whole indicates the

19    claimant is limited to SVP 3 level tasks and brief, superficial contact with the

20    general public and no corroborative teamwork endeavors with co-workers."

1   Tr. 29.  Ultimately, the ALJ is responsible for reviewing the evidence and making

2   the residual functional capacity determination, not any physician.  *See Rounds v.*

3   *Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *Stubbs–*

4   *Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008).  The ALJ found that the

5   evidence as whole supported an RFC which limited Plaintiff's contact with

6   coworkers and the public.  Tr. 29.  As Plaintiff points out, Dr. Chandler's

7   "evaluation noted that Ms. Allread specifically indicated that her problems affected

8   her ability to work because she hated and distrusted people."  ECF No. 15 at 19

9   (citing Tr. 638) (internal quotation marks omitted).  The ALJ incorporated these

10  findings by limiting Plaintiff's public contact in the RFC.

11         Other medical opinions also support the ALJ's assessed social functioning

12  RFC.  An ALJ may discredit treating physicians' opinions that are unsupported by

13  the record as a whole or by objective medical findings.  *Batson v. Comm'r of Soc.*

14  *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  For example, Dr. Kumar opined

15  Plaintiff's "ability to interact with coworkers and the public may be moderately

16  impaired."  Tr. 860.  State agency psychological consultant opinions assessed that

17  Plaintiff had moderate limitations in social functioning.  Tr. 28 (citing Tr. 105-26,

18  Tr. 129-58).  The ALJ "finds the claimant's level of social functioning is more

19  restricted [than the state agency psychological consultants found] based on reports

20  of mood swings, anger, and domestic violence."  Tr. 28.  The weight of the medical

1  evidence supports the ALJ's assessed RFC, so the ALJ did not err in his treatment

2  of Dr. Chandler's opinion.

3  **CONCLUSION**

4      After review, the Court finds that the ALJ's decision is supported by

5  substantial evidence and free of harmful legal error.

6      **IT IS ORDERED:**

7      1.  Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

8      2.  Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**

9  The District Court Executive is directed to file this Order, enter

10  **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

11  **THE FILE.**

12      DATED this 23rd day of February, 2017.

13                              _S/Mary K. Dimke_
                               MARY K. DIMKE
14                     UNITED STATES MAGISTRATE JUDGE